**MASTROM, INC., d/b/a Professional Management, Appellant,**

v.

**PROFESSIONAL MANAGEMENT, INC., et al., Appellees.**

**No. 71–1805.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1972.

Decided April 24, 1972.

---

O. Doyle Martin and Albert Q. Taylor, Jr., Greenville, S. C. (Leatherwood, Walker, Todd & Mann and Dobson & Dobson, Greenville, S. C., on brief), for appellant.

Paul Foster, Jr., Robert A. Dobson, III, Greenville, S. C., and William B. Long, Jr., Greenville, S. C. (Mann, Foster & Brissey and Hill, James, Long, Fore & Wyatt, Greenville, S. C., on brief), for appellees.

Before CRAVEN and BUTZNER, Circuit Judges, and YOUNG, District Judge.

JOSEPH H. YOUNG, District Judge.

Mastrom, Inc. seeks damages and an injunction against a group of its former employees who constituted the entire "professional" staff of its Greenville, South Carolina office. Led by defendant Mulvaney, the employees have formed a competing corporation, performing the same services while using the same telephone number and occupying the same building used and occupied while they were employees of Mastrom. Two letters have been relied upon by the parties, a letter dated June 19, 1969 written by Mastrom's Executive Vice President to each client served by the Greenville office,[1] and followed on June

---

1. Jack C. Pettee, Executive Vice President of Mastrom wrote the following letter to its clients:

As of the end of this month, there will be a number of changes in our staff. In all probability, it will be necessary for us to assign a different consultant to your account.

We are well aware of the fact that our men usually develop a close personal re-

21 by a letter to the same clients written by defendant Mulvaney.[2] Between the date of these letters and June 30, the defendants removed the clients' files from Mastrom's Greenville office and delivered them to the clients to whom they belonged. Mastrom primarily complains of the June 21 letter and the removal of the files. Following a trial to the court, the trial judge entered judgment for defendants. We affirm.

Mastrom, Inc. raises four issues on appeal: (1) whether appellee Mulvaney breached a duty to Mastrom in terminating his employment and engaging in a competing business; (2) whether Mastrom had obtained an interest in the term "Professional Management" of such a nature as to deny its use to appellees in the area of competition; (3) whether plaintiff proved compensable damages as a result of a breach of duty by appellees; and (4) whether the trial court abused its discretion in failing to declare a mistrial. We find no merit in any of these contentions.

Considering appellant's first and third contentions together, we conclude (1) that appellee Mulvaney did not breach any duty arising from a covenant not to compete with Mastrom, and (2) that even if appellees breached a common law duty arising from their employment, Mastrom has failed to prove that the breach resulted in compensable damage to Mastrom. The law of North Carolina, where the written contract was allegedly executed, does not favor enforcement of covenants not to compete, Kadis v. Britt, 224 N.C. 154, 29 S.E.2d 543 (1944), and the trial judge was clearly correct in declining to draft and enforce such a covenant when the contract containing the covenant was not in evidence, its terms were disputed and it had been superseded in a number of respects following its execution. The removal of the client files from the local Mastrom office and their return to the individual clients' offices and Mulvaney's June 21 letter to the Greenville clients may have been a breach of a common law duty arising out of appel-

lationship with their clients. As a result, changes may be unwelcome. Should you prefer to make other arrangements, we will certainly understand. Of course, we will continue to stand behind any work done for you in the past.

It will be most helpful to us if you will indicate your wishes for July scheduling. Please return the copy of this letter in the envelope provided.

Cordially,
Jack C. Pettee
Executive Vice President

JCP/fc
Mr. Pettee:
—Please discontinue MI service, effective at the end of June, 1969.
—Please continue regular service, subject to the usual thirty-day notice, even though it may be necessary to assign a different consultant.

. . . . . . . . . . . . . . . . . . . . . . . .
Initial

2. Dear Doctor:
We have had many 'phone calls regarding Mr. Pettee's letter dated June 19.
The purpose of his letter is not fully explained by its contents.
The facts are these:
1. Will Kirby, Leo Mulvaney, Edward Strom and Sam Swann have resigned from

Mr. Pettee's Company . . . (legally registered as "Mastrom, Inc.") effective June 30, 1969.
2. We intend to continue in our business of service to doctors under a franchise from the largest company of this type in the world . . . Black & Skaggs Associates, Battle Creek, Michigan. B&S Associates own the trade-mark "PM" (for professional management.) They have 36 offices in the U.S. and Canada, (Atlanta, Charlotte, etc.) and they serve over 7,000 doctors.
· 3. As "employees" of Mastrom, Inc., until June 30, 1969, we cannot solicit your business until after that date.
4. As regards the thirty day notice item in Mr. Pettee's letter . . . for your information, the booklet that has been given to "Mastrom, Inc." clients in the past contains the paragraph below, quoted in its entirety:
"There is no written contract between MI and its clients. Service may be terminated at any time, by either party."
5. If you wish further details, you may 'phone the man who now does your work.

Professional Management
614 East Washington Street
Greenville, S.C. 29602
233–8677

lees' employment. However, we do not decide this point, since appellant has failed to establish that appellees' actions brought about the loss of appellant's Greenville business.

■ The trial judge found as a fact that much of the value of the Greenville office was directly attributable to the employees at that office, and this is undisputed; therefore, when the entire staff of that office departed, in whatever manner, they would inevitably take much of the value of the office with them. As to any value which the office had, or should have had, after appellees' departure, the trial judge also found as a fact that Mastrom had abandoned its Greenville clientele to appellees. This finding is disputed by appellant, but it does not appear to be clearly erroneous; on the contrary it is supported by much of the evidence, in particular the June 19 letter to the Greenville clients from Mastrom's Executive Vice President and the failure of anyone from Mastrom's main office to visit the Greenville location until after June 30, the effective date of the Greenville staff's resignations.

■ Appellant's second contention is that Mastrom had obtained an interest in the term "Professional Management" of such a nature as to deny its use to appellees in the Greenville area. This argument is in conflict with the trial judge's second finding of fact, to the effect that Mastrom "has not registered the trade-mark 'Professional Management' and does not own a possessory interest in same" and that appellees "did not intend or attempt, by their use of the name Professional Management, Inc., after July 1, 1969, to pass themselves off" as appellant. This finding is amply supported by the record.

■ Finally, appellant urges that the trial judge should have declared a mistrial because of his demonstrations of hostility to appellant's case and lawyer. We have examined the record in this connection and find no evidence to support this argument.

Affirmed.